HICKORY v. RAILROAD.

(Filed May 9, 1905.)

*Non-Suit—Effect of First Trial—Rights at Second Trial.*

1.  In an action to enjoin the erection of certain structures, plaintiff at the first trial in the Superior Court, in deference to an adverse intimation upon the evidence and certain findings by the Court, submitted to a non-suit and appealed. Upon appeal, this court found error and remanded the case. At the second trial, the court upon the certificate of this court entered judgment according to the prayer of the complaint; *held*, that the plaintiff was not entitled to judgment without a new trial by a jury.

2.  Where a non-suit is taken in deference to an adverse ruling which is reversed on appeal, a new trial is awarded and at the next trial the parties must start even, each having an equal right with the other to present his entire case *de novo*, unaffected by the proceedings on the first trial and appeal, except so far as the legal principle settled by this court is applicable to the facts as established at the next trial.

3.  Where the first trial has, by consent of parties, been by the Court the second trial must be by a jury, unless there be a new agreement that the Court may try.

ACTION by City of Hickory against Southern Railway
Company, heard by *Judge James L. Webb* at the February
Term, 1905, of the Superior Court of CATAWBA County.

This is an action by the City of Hickory against the
Southern Railway Company for an injunction to restrain it
from erecting a platform or any other structure on the land
in said city, the boundaries of which are described in a deed
from Henry W. Robinson to the Western North Carolina
Railroad Company, dated March 10, 1880, which deed was
executed as a substitute for a prior lost deed of the same pur-
port, dated May 26, 1859, the contention of the plaintiff be-
ing that by the terms of the said deeds the Western North
Carolina Railroad Company, predecessor of the defendant,
held the said land in trust for the uses and purposes specified
therein.    A trial of the case was had before *Judge Neal* at
May Term, 1904, at which much testimony both oral and
documentary was introduced.    The court submitted without
objection to the jury the following issues: "1. Is the de-
fendant in this action a trustee for the plaintiff of the land
described in the complaint, and does it hold the same in trust
not to be built upon or occupied by either party?"    2. "Is
the defendant's claim to the land described in its alleged
deed and not actually occupied by the defendant, barred by
the statute of limitations?"    "3. Is the defendant in the
lawful possession of the land covered by the platforms de-
scribed in the fifth paragraph of the complaint?"    "4. Does
the defendant so maintain its present freight depot as to
constitute a nuisance to the plaintiff's citizens and the pub-
lic generally?"    "5. If the defendant is permitted to en-
large the present depot as contended by the plaintiff, will
such enlargement and extension constitute a nuisance to the
plaintiff and the public generally?"

It was agreed by counsel as follows: "In order to save,
the submission of a great number of issues and at the same
time present the cause for intelligent decision, it is agreed

that the court may find certain facts deemed necessary by the parties." The presiding Judge thereupon found certain facts, which are set out in the former case and the substance of which is stated in the report of the case at a former term (137 N. C., 189). Briefly stated these findings were as follows: (1). The location of the Western North Carolina Railroad in 1859 at the place where Hickory now is and the continuous use and possession of the station house and the operation of the road ever since that time. (2). The sparse settlement of the place at that time and the incorporation and growth of Hickory as a town. (3). The execution of the deed by Robinson to the Railroad company in May 1859, registered May 13, 1904, which conveyed the land to the latter "for the purpose of a public square around the depot for the free and common use of both the railroad and the town of Hickory, not to be built upon or exclusively occupied by any one to the exclusion of the public as a free common." (4). The execution of the deed of March 10, 1880 in place of the former deed, which had been lost, registered April 17, 1880, including the defendant's road bed and station house now in controversy. (5). Endorsement of James W. Wilson, president of the Railroad Company, namely, "The original deed having been destroyed without record, this deed is accepted in lieu thereof." (6). Minute book of the railroad company of March 1870 to May 1880, showing that there had been no authority conferred on Wilson to accept the deed and no ratification of his act. (7). The charter of the Railroad Company (Act 1854-5 Ch. 228.)

Upon the evidence (and upon the findings also, as we suppose, though it is not so stated), the plaintiff prayed for certain instructions to the jury which were refused. The court then intimated adversely to the plaintiff upon the evidence, findings and issues, in deference to which intimation the plaintiff submitted to a non-suit and appealed. At the last term of this court, the case was heard and the contentions of

the parties were fully discussed by *Justice Douglas* in an opinion written for the court. We then decided that there was error and remanded the case. At the last trial in the Superior Court the plaintiff, upon the certificate of this court, moved for judgment according to the prayer of the complaint, which motion was granted and a judgment entered perpetually enjoining the defendant "from erecting any building, platform or any other structure whatsoever or any part thereof" on the said land. Defendant excepted and appealed.

*T. M. Hufham, Self & Whitener* and *E. B. Cline* for the plaintiff.

*S. J. Ervin* for the defendant.

WALKER, J. after stating the case: We are unable to see upon what ground the plaintiff was entitled to judgment in the court below, in the then state of the cause, without a new trial by a jury. When the court intimated an opinion, which was adverse to the plaintiff and it withdrew from the court by submitting to a non-suit, if there was error in that intimation, there was only one way this court could correct it and restore the plaintiff to its right and that was by granting another trial, when the trial must be *de novo*. All that was done up to the time of the non-suit goes for nothing and the case must be retried from the beginning. This was evidently the view we took of the matter at the former hearing in this court, as the concluding words of *Justice Douglas* show. "As the facts are now presented to us" the plaintiff was entitled to the relief demanded, which clearly implies that the facts might be presented differently at the next trial, and this is utterly inconsistent with the plaintiff's present contention that it was entitled to judgment according to the prayer of the complaint, upon the certificate of this court and without any trial at all, because the Judge had made cer-

tain findings which were in themselves sufficient as the basis of such a judgment. Counsel have cited us to no authority to sustain the contention and we are quite sure that the matter has been decided the other way as will presently appear. "Whenever in the progress of a cause the plaintiff perceives that the judge or the jury are against him or that he will, on a future occasion, be able to establish a better case, he may elect to be non-suited." *Bank v. Stewart,* 93 N. C., 402. Plaintiff chose to withdraw, rather than risk the judgment of the court or test the correctness of its opinion upon the law of his case by exception thereto and an appeal to this court. When it refused to prosecute the cause any further, it thereby agreed that all that had been done should be annulled with the reservation of the single question as to its right in law to re-enter the court and prosecute its action anew and subject to the opinion of this court upon that point alone. The law will not give the plaintiff two chances. When the court gives an intimation which he thinks imperils his success, and he wishes to have the court reviewed and its error corrected, he may withdraw by submitting to be non-suited so that he will not be concluded by a judgment upon the merits and may come back into court again and present a better case, but he forfeits thereby all right, if the judgment is reversed, to have the new trial commence where the court left off. In order to avail himself of any such privilege, he must try his case upon the merits to final judgment and not even then will he be entitled in all cases to that advantage. When a non-suit is taken in deference to an adverse ruling which is reversed on appeal, a new trial is awarded and at the next trial the parties must start even, each having an equal right with the other to present his entire case *de novo* in a better light. It has been said that "a non-suit is but like the blowing out of a candle, which a man at his own pleasure may light again." This is an apt illustration, but it does not mean that the plaintiff may re-enter the court when he has once aban-

doned the further prosecution of his case, and avail himself of what had already been done at the former trial. That he will be entitled to the full benefit of the legal principle settled by the appellate tribunal, if he has been driven to a non-suit and appeals, and that his adversary will be concluded by it so far as it is applicable to the facts as established at the next trial, is undeniable, but this is all he has accomplished. He cannot enjoy any greater advantage otherwise than if he had taken a voluntary non-suit and brought a new suit for the same cause of action. It was at one time a question whether the plaintiff could submit to a non-suit and appeal, but this has been settled in his favor with the limitation, however, that upon a reversal of the trial court he is only entitled to a trial of the whole case *de novo.* But we think the very question presented in this case has been decided by this court contrary to plaintiff's contention. In *Benbow v. Robbins,* 71 N. C., 338, plaintiff brought his action to have defendant enjoined from using an easement in excess of his rights therein. The parties waived a jury trial and consented that the court might find the facts which was done. The court, upon its finding of facts, decided that plaintiff's cause of action was barred by the statute of limitations and he excepted and appealed. This court reversed the ruling and judgment, certifying only to the court below (as in our case) as follows: "There is error. Judgment reversed." At the next trial in the court below the plaintiff contended that the case should not be tried anew but " that the parties were bound by the finding of facts at the former trial which were in favor of plaintiff." The court was of this opinion and gave judgment for plaintiff. Defendant excepted and appealed. This court held that the court below erred in its ruling. The court says: "Whether a trial of facts is by a jury, or by the court, if it appears that the finding was influenced by misdirection or misconception of the law, a new trial will be granted by this court on appeal. And

in such case the former trial goes for nothing. And where the first trial has, by consent of parties, been by the court, the second trial must be by jury, unless there be a new agreement that the court may try." *Benbow v. Robbins,* 72 N. C., 422. The court then directed that a venire *de novo* be awarded. Two cases, the one we have cited, and the case at bar, could scarcely be more alike in their facts and in the crucial point involved. *Benbow v. Robbins,* as reported in 72 N. C., 422, was cited and approved in *Isler v. Koonce,* 83 N. C., 55, upon a substantially similar state of facts. The difference in the two cases is that in *Isler v. Koonce,* the court below overruled the plaintiff's motion for judgment and granted a trial *de novo* and even allowed new parties to be made, whereas in our case the court granted plaintiff's motion for judgment. The ruling in that case was sustained by this court which held that where judgment is reversed the parties are remitted to their original right to have a trial by jury, although the parties had at the former trial waived a jury and agreed that the judge might try the case. Referring to *Benbow v. Robbins, supra,* the court by *Justice Dillard,* says:

"There, after the reversal of a judgment in favor of the defendant on a trial of the facts and law by the court, the plaintiff, conceiving himself entitled to stand upon the advantage of the facts which had been found by the judge, procured judgment to be entered in his favor, and on appeal to this court that judgment was reversed, as reported in 72 N. C., 422. And, then, after setting forth the grounds on which the judgment in that particular case was held erroneous, the court lays down the general rule that 'where the first trial has by consent been by the court, the second trial must be by a jury unless there be a new agreement that the court may try.' This sustains the judge below on the first point of error assigned by the appellant, and precludes the necessity of any further discussion as to that matter." The principle of these cases was approved in *McMillan v. Baker,*

92 N. C., 110, and also asserted in *Mitchell v. Bannon,* 10 Ill. App., 340, citing *Chickering v. Falls,* 29 Ill., 294. See also *Gott v. Judge,* 42 Mich., 625; *Dows v. Swett,* 127 Mass., 364. The cases cited by the learned counsel for the plaintiff in the argument before us are not in point. They might perhaps have applied if the case had been tried upon its merits to a final determination and an appeal taken from the judgment of the court, but such is not the case here. The plaintiff did not ask for judgment upon the facts found, even if this is a case where he was entitled to such judgment, but he withdrew his case from the court, and the only remedy for the correction of any error committed by the court below is a new trial, when the plaintiff will be permitted to prove its case by the same or by other and more convincing testimony (if such is needed) and the defendant will have the same privilege in respect to its defense, the rights of the parties being equal and reciprocal. The court below will proceed with the trial of the issues raised by the pleadings, just as if there had been no trial before the court and a jury, applying the law of the case as settled by this court in its former opinion, so far as it may be applicable to the case as newly developed. It may be that the next trial, in view of our decision at the last term, should lead to a particular result, as argued by the plaintiff's counsel, but we cannot see that it certainly will do so without knowing what the facts will be, as then found by the jury or by the court, if a jury trial is again waived, and we have no right to conjecture as to what they will be. *McMillan v. Baker, supra.* New and essentially different proof may be introduced by the respective parties and the legal aspect of the case may be entirely changed.

Our conclusion in this appeal accords with the result we reached at the last term, as will clearly appear, we think,

from the opinion of the learned justice who spoke for the court.

There was error in the ruling of the court. The judgment will be set aside and a new trial awarded.

Error.